IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Randy Govan, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DHO Shirley Singleton, ) <br> Warden Levern Cohen, ) <br> Major Christopher Felder, ) <br> and Carl J. Frederick, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.8:07-3789-MBS-BHH <br><br> **REPORT AND RECOMMENDATION** <br> **OF MAGISTRATE JUDGE** |

The plaintiff Randy Govan brought this action alleging civil rights violations pursuant to 42 U.S.C. § 1983. Before the court are the plaintiff's motions to compel discovery (# 23 and 24) and for an extension of time to complete discovery (# 25) and the defendants' motion for summary judgment (# 21).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on November 16, 2007, seeking damages for alleged civil rights violations.[1] On March 14, 2008, the defendants filed a motion for summary judgment. By order filed March 17, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 25, 2008, the plaintiff filed a response opposing the defendants' summary judgment motion.

---

[1] This date reflects the date which the envelope was stamped as having been received by the prison mailroom. (Compl. Attach. # 2.) *See Houston v. Lack,* 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

## **FACTS**

The plaintiff is currently incarcerated at the Allendale Correction Institution. On July 14, 2006, when the plaintiff was being housed at the Ridgeland Correctional Institution, he was charged with sexual misconduct. In his complaint, the plaintiff alleges that on July 15, 2006, he was placed in the special management unit ("SMU") and on July 20, 2006, he was charged with sexual misconduct and received a copy of the incident report. (Compl. at 4.) The plaintiff states he met with his counsel substitute the following week. (*Id.*)

On August 1, 2006, a disciplinary hearing was held before the defendant Disciplinary Hearing Officer ("DHO") Shirley Singleton. (*Id.*) The plaintiff's counsel substitute was present at the hearing and that the victim participated in the hearing by telephone. (Compl. at 5.) The plaintiff alleges that he requested a continuance so that he could obtain a statement from a witness, Sgt. Jefferson, and speak with his counsel substitute, but his request was denied. (*Id.* at 4.) The plaintiff was found guilty of sexual misconduct and sentenced to 240 days of disciplinary detention, the loss of 180 days of canteen and telephone privileges, the loss of 365 days of visitation, and the loss of ninety days of good-time credits. (Compl. at 5; Defs.' Mem. Supp. Summ. J. Attach . #8- Disciplinary Report and Hearing Record.)

The plaintiff filed a Step One appeal challenging his conviction on the grounds that the DHO denied him the opportunity to present a witness, Sgt. Jefferson, and the DHO failed to explain her reasons for such action which he alleged violated his rights under the South Carolina Department of Corrections ("SCDC") Disciplinary policy. He also alleged he was denied the opportunity to speak with his counsel before the hearing and the sanctions imposed were excessive. (Compl. Attach.) He requested that the conviction be overturned and the sanctions dismissed or reduced. *(Id.)* The grievance was forwarded

to the Warden and he denied the plaintiff's appeal on August 31, 2006. (*Id.*)  The plaintiff then filed a Step Two appeal which was denied on October 2, 2006.  (*Id.*)

The plaintiff also raises claims relating to his treatment after he was released from SMU, including being on lockdown for fifteen hours a day and being required to wear a pink jumpsuit.   In this complaint, the plaintiff alleges violations of substantive and procedural due process rights.  (Compl. at 2.)  He is seeking actual and punitive damages for mental and emotional distress.  (Compl. at 9-10.)

## **APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

### Exhaustion

The defendants contend the plaintiff has failed to exhaust his administrative remedies. The undersigned agrees as to some of the plaintiff's claims.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. In *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2386, 165 L.Ed.2d 268 (2006), the United States Supreme Court held that the PLRA exhaustion requirement requires proper exhaustion. The Court stated that "[a]dministrative law requires proper exhaustion of administrative remedies which means using all steps that

the agency holds out, and doing so properly." *Id*. (Internal quotations and citations omitted). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. *Id*.

The purpose of the exhaustion requirement is twofold.  First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court." *Woodford*, 126 S.Ct. at 2385 (*quoting McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).  Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id*. Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen days of the alleged incident of which the inmate complains.  The Warden must respond to the Step 1 grievance in writing no later than forty days from the filing of the initial grievance.  If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five days of the receipt of the response from the Warden.  A responsible official has sixty days to respond to the Step 2 grievance.  The decision of the official who answers Step 2 is considered the SCDC's final response in the matter.  Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983.  42 U.S.C. § 1997e.

The plaintiff claims that he wrote a letter to the Director of Operations regarding his claims relating to his treatment after he was released from SMU, including being on

lockdown for fifteen hours a day and being required to wear a pink jumpsuit. (Pl.'s Mem. Opp. Summ. J. at 7.) He alleges that the defendants did not respond. (*Id.*) However, this letter is not included in the record. In any event, even assuming that the plaintiff sent such a letter on December 5, 2006, there is no evidence that the plaintiff fully exhausted his administrative remedies before filing this action.

Exhaustion is a prerequisite to suit that must be completed prior to filing an action. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005). "[T]here is no futility exception to the PLRA's exhaustion requirement." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). The plain language of the statute requires that available administrative remedies need to be exhausted.

First, the court notes that the PLRA requires the exhaustion of remedies within the agency only and does not require resort to the appellate state courts. *Woodford*, 126 S.Ct. at 2386. To exhaust their administrative remedies, inmates are not required to go beyond Step 2. *See Brown v. Evans Correctional Institution Medical Staff*, 2007 WL 1290359, at*4 (D.S.C. April 30, 2007) ("In sum, the fact that the South Carolina legislature made a court available to prisoners who wanted to appeal a final decision by the SCDC denying a SCDC grievance does not alter the federal PLRA by extending its administrative exhaustion requirement to include exhaustion in all state judicial forums."); *Charles v. Ozmint*, 2006 WL 1341267 (D.S.C. May 15, 2006) (recognizing that completion of Step 2 grievance exhausts administrative remedies and § 1997(a) does not require inmates to further appeal to Administrative Law Court).

Assuming arguendo the plaintiff's letter is the equivalent to filing a grievance, it is undisputed that the plaintiff failed to take the necessary additional steps to exhaust his administrative remedies. Even if the defendants did not respond, the plaintiff has not alleged he made any effort to file the grievance with another officer or make any other

6

attempts to file a for further review. *See Jones v. Smith*, 266 F.3d 399, 400 (6th Cir.2001) (holding exhaustion required even though plaintiff claimed futility). Accordingly, based on the evidence provided, the plaintiff has not exhausted all administrative remedies. Therefore, it is recommended that the plaintiff's claims regarding his treatment after he was released from SMU be dismissed for failure to exhaust administrative remedies. Further, any issues the plaintiff alleges with his grievances do not support a finding that his constitutional rights were violated at his disciplinary hearing.

Additionally, assuming the plaintiff could bring an action concerning his disciplinary hearing, the undersigned finds there has been no due process violation. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the United States Supreme Court addressed the due process rights of federal prisoners during disciplinary proceedings. In *Wolff*, the Supreme Court held that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. *Id.* The Court held that, even so, this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. *Id.* at 556-57.

The Supreme Court enumerated the following five procedural safeguards which are required in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact-finder as to the evidence relied upon and the rationale behind the disciplinary tribunal's conclusion. 418 U.S. at 563-66. Pursuant to *Wolff*, there was no violation of the plaintiff's due process rights.

The plaintiff offers no evidence to support his contention that Sgt. Jefferson would have testified favorably for him. In fact, the plaintiff states he agrees with the defendants that "there is no indication what the Plaintiff's witness would have testified to." (Pl.'s Mem. Opp. Summ. J. Mot. at 19.)  While the plaintiff obviously wanted this alleged witness to be present and testify favorably for him, reviewing the evidence, the undersigned does not find that a genuine question of fact has been presented as to whether a constitutional violation occurred.  There is no evidence that Sgt. Jefferson was a witness or that he would have testified favorably for the plaintiff.

Further, the Supreme Court has held that a finding of "some evidence" in the record to support the decision of a prison disciplinary board satisfies the requirements of due process.  *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). The determination of whether the standard is satisfied merely requires inquiry into "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*  Further, it must be remembered, however, that "[a]scertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." *Id*. at 455-56.  If the *Wolff* guidelines are satisfied, prison officials must be given "wide ranging deference" in pursuing legitimate penological concerns. *James v. North Carolina Prisoners Labor Union,* 433 U.S. 119, 126 (1977) (curbing an unlawful drug epidemic). Such deference is essential "because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his dominion than the reviewing judge. " *Bell v. Wolfish*, 441 U.S. 520, 548 (1979). Accordingly, findings of prison disciplinary boards meet the minimum requirement of due process if they are supported by "some evidence" on the record. *Superintendent v. Hill,* 472 U.S. at 454.  Here, other than the plaintiff's denials, the evidence in the record supports the findings of the DHO.

Furthermore, the plaintiff's allegations relating to any violations of the SCDC policy regarding disciplinary proceedings also fail. As stated above, the failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation. *See Keeler*, 782 F.Supp. at 44 (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

Finally, to the extent the plaintiff is asserting a claim based on the defendants' alleged violation of, or failure to follow, their own policies and procedures, this assertion also fails to set forth a claim of a constitutional magnitude. The failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation. *See Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); *Scott v. Hamidullah*, 2007 WL 904803 *5 n. 6 (D.S.C. March 21, 2007) (*citing Riccio v. County of Fairfax, Virginia,* 907 F.2d 1459, 1469 (4th Cir. 1990); *Johnson v. S.C. Dep't of Corrections,* 2007 WL 904826 at *12 (D.S.C. Mar.21, 2007) ("Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation.") (*citing Riccio,* 907 F.2d at 1469).

**Heck**

The defendants also contend that this 1983 action is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The undersigned agrees.

The plaintiff may not bring an action pursuant to § 1983 for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," without first having that conviction or sentence reversed, overturned, expunged, or otherwise called into question. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The United States Supreme Court

specifically extended the *Heck* reasoning to the context of inmate disciplinary convictions in *Edwards v. Balisok*, 520 U.S. 641 (1997).

While *Heck* does not universally apply to all suits challenging prison disciplinary proceedings or institutional offense convictions, in situations such as the plaintiff's, where the administrative action affected credits toward release based on good time served, *Heck* bars the § 1983 suit. *See Muhammad v. Close*, 540 U.S. 749, 751 (2004) ( "*Heck's* requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence.")  A prisoner cannot bring a § 1983 action challenging a disciplinary proceeding resulting in the loss of good-time credits if the possible relief would necessarily imply the invalidity of the punishment imposed, unless the disciplinary action was previously invalidated. *Heck,* 512 U.S. at 646-47.  Failure to allow the plaintiff to have witness testimony in his defense is the kind of procedural defect that would imply the invalidity of the disciplinary action. *Id*. at 647.  The plaintiff was sanctioned with the loss of good time credit and his disciplinary conviction has not been invalidated in any way. Therefore, the plaintiff's claim that his due process rights were violated during the disciplinary hearing is barred by the decision in *Edwards*.  *See also Fox v. Ward*, 2008 WL 550115 (D.S.C. 2008).

The undersigned notes that the plaintiff is seeking damages for each day he spent in the SMU.  (Pl.'s Mem. Opp. Sum.. J. Mot. at 11.)  A judgment in the plaintiff's favor could be construed as a judgment at odds with the plaintiff's disciplinary conviction.  In addition, the plaintiff could clearly have chosen to challenge his loss of good time credits via a habeas action.  Thus, as the plaintiff's good time credits were affected and the plaintiff has not shown that his disciplinary conviction and sentence have been invalidated, the plaintiff's § 1983 claims are barred at this time.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Plaintiff's Motions to Compel (# 23 and 24) and for an extension (#25) be DENIED and the Defendants' Motion for Summary Judgment (# 21) be GRANTED.

IT IS SO RECOMMENDED.

                                                s/Bruce Howe Hendricks
                                                United States Magistrate Judge

August 21, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).